IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HEATHER F.[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 2:24-cv-01931-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Heather F. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). For the reasons provided below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

On May 4, 2022, Plaintiff protectively filed an application for disability insurance benefits ("DIB"), alleging disability beginning on April 13, 2022. Tr. 185-91. The claim was denied initially and on reconsideration. Tr. 70, 76. Plaintiff requested a hearing before an administrative law judge ("ALJ") and appeared before ALJ Carla Suffi, on October 25, 2023. Tr.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

Page 1 – OPINION AND ORDER

33-64. Plaintiff, along with her attorney and a vocational expert, testified at the hearing. The ALJ found Plaintiff not disabled in a written decision issued December 8, 2023. Tr. 12-32. The Appeals Council denied review on September 24, 2024, making the ALJ's decision the final agency decision. Tr. 1-6. Plaintiff's timely appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 40 years of age on her alleged onset date and has at least a high school education. Tr. 27. She is able to perform her past relevant work as a retail clerk. Tr. 27. In her application, she alleged disability due to fibromyalgia, chronic fatigue syndrome, Lyme disease, myalgia, myositis, and cognitive issues. Tr. 66.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

    2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

    3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

          a.     The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

    4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

    5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c). If the claimant cannot perform such work, he or she is disabled.

See also Bustamante v. Massanari, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. § 404.1566 (describing "work which exists

Page 3 – OPINION AND ORDER

in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 13, 2022, her alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, chronic fatigue syndrome, history of Lyme disease, degenerative disc disease of the lumbar spine, and anxiety disorder vs. pain disorder. Tr. 17. At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. Tr. 18-20. The ALJ found that Plaintiff had the RFC to perform light work with the following additional limitations:

> [She] can occasionally stoop, kneel, crouch, crawl and climb ramps and stairs; never climb ladders, ropes or scaffolds, or perform work involving exposure to extraordinary hazards such as unprotected heights and dangerous, unguarded moving mechanical parts or machinery that can engage to body. [She can] perform frequent overhead reaching and frequent use of the bilateral upper extremities for gross handling and fine fingering manipulation. [She can] remember and sustain the attention and concentration to carry out simple and detailed but not complex work tasks and decision making.

Tr. 20. At step four, the ALJ determined that Plaintiff can perform her past relevant work as a retail clerk. Tr. 27. At step five, the ALJ found that, in light of Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy such that Plaintiff could sustain employment despite her impairments, including such representative occupations as: collator operator; mail clerk; and cafeteria attendant. Tr. 28. The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the

Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues that remand is warranted because the ALJ erred in her evaluation of Plaintiff's subjective symptom testimony, in her evaluation of the joint medical opinion of Alicia Hicks, PA-C, Caroylyn Day, M.D., and CK Day, M.D., in her evaluation of the lay witness testimonies of Plaintiff's supervisor and Plaintiff's husband, in her step four decision, and in the hypothetical posed to the vocational expert at step five.

### I.    Subjective Symptom Testimony

Plaintiff argues that she is unable to work due to fatigue, pain she described as "stabbing, shooting pain" in her hands and arms, loss of balance, "bone pain" in her feet and shins, muscle aches in her legs, back, and shoulders, and brain fog. Tr. 45. At her hearing, Plaintiff stated that her brain fog caused her to drop out of college, and that she has been receiving mental health counseling, though it does not help with her physical impairments. Tr. 45. When asked about her fatigue, she explained that she sometimes goes back to bed after waking up because she is unable to stay awake. Tr. 46. She also testified that she can drive, though she has good and bad days so it

varies. Tr. 40. Plaintiff testified that she does not exercise, that she takes a muscle relaxer for internal tremors in her legs, that she can only sit for up to thirty minutes before needing to change position, and that she can lift up to fifteen pounds but not repetitively. Tr. 47-48. As for treatment, Plaintiff testified that she currently takes cyclobenzaprine and tramadol, that she has taken other fibromyalgia medications in the past and they made her symptoms worse, and that she uses a cane when she is dizzy or must walk on uneven ground. Tr. 44, 49. As for daily activities, she stated that while she can handle her hygiene independently, she must use a shower seat, that she has difficulty cooking because weakness and fatigue make it difficult to use a knife, that she has difficulty typing, writing, and gripping, that she orders groceries online from Walmart because it's cost effective and she has a difficult time navigating a large building and having to carry her groceries. Tr. 49-50. She also stated that she can only persist at a household chore for up to fifteen minutes before needing a break, that her breaks include putting her feet up or lying down in bed, that she takes three hour naps every day she does not have work, that her medications make her drowsy, and that her brain fog causes her short-term memory issues such that she has to write everything down. Tr. 49-54. In a written statement, Plaintiff added that she handles medication and time management of her daughter, that she avoids going outside because it makes her dizzy and rainstorms can cause migraines, that her brain fog makes learning and reading challenging, and that her condition affects every aspect of her physical and mental well-being. Tr. 241, 247-49.

    When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; instead, the ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017). The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

### A. Objective Medical Evidence

In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Here, the ALJ relied, in part, on Plaintiff's medical records to discount her symptom allegations. In her consideration of the evidence, the ALJ found Plaintiff's allegations of muscle weakness, extreme fatigue, and constant pain to be at odds with the available medical evidence. Tr. 21-25. The ALJ discussed the objective medical evidence and sufficiently supported her conclusion, because "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

For example, the ALJ discussed Plaintiff's complaints about her full body, burning pain, fatigue, and muscle weakness, but records show that she consistently had normal or unremarkable test results, including negative straight leg test, normal motor strength and reflexes, normal gait and balance, and described as awake and alert. Tr. 22-24, citing 402, 417, 456, 462, 468, 471, 500, 623-24, 648, 669, 761, 768, 772-73. Even when she presented for pain management and stated, "If you touch me there, I will cry," referring to her medial shins, she was not in any acute distress and test results showed all normal findings, normal motor strength and reflexes, normal grip strength, and negative straight leg raise. Tr. 758, 761. Plaintiff also went to urgent care complaining of full body aches and pains rated at a 9/10 yet appeared in no acute distress with normal test results. Tr. 794. Plaintiff's claims also state she had extensive workups and treatment for her fibromyalgia and chronic fatigue, yet those records do not exist. Tr. 22, 25, citing Tr. 656, 802.

Plaintiff has not shown that the ALJ's finding is unreasonable or unsupported by substantial evidence and has failed to show that the ALJ erred in discounting Plaintiff's allegations as inconsistent with the objective evidence. Though Plaintiff argues for a different reading of the record, the ALJ did not err in her evaluation.

## B. Treatment

The ALJ rejected Plaintiff's symptom testimony because the medical evidence showed that, despite consistently reporting chronic pain and fatigue, Plaintiff's records showed a lack of treatment. An ALJ may reject subjective complaints where an "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" exists. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." (quoting *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)) (internal quotation marks omitted))).

The ALJ properly considered the objective medical record in discounting Plaintiff's subjective symptoms testimony. Although Plaintiff stated she suffers from chronic pain, fibromyalgia, Lyme disease, and chronic fatigue, her treatment records do not reflect her complaints. For example, she stated to her providers that she has had extensive workups done for her conditions, yet those records do not exist, and no workups were done by any of her providers. Tr. 22, 25, citing Tr. 656, 802. Plaintiff also stated that her symptoms from fibromyalgia and Lyme disease are indistinguishable from each other, yet she is not receiving any treatment for her Lyme disease and only takes cyclobenzaprine and tramadol for her fibromyalgia. Tr. 21, 44. Plaintiff further stated that she only sees her providers for checkups "every couple months," and has not attempted to pursue any other forms of treatment. Tr. 44.

Given Plaintiff's minimal and conservative treatment history, along with Plaintiff's testimony, the ALJ did not err in discounting her subjective symptom complaints.[2]

---

[2] Because the ALJ provided at least one valid reason for discrediting plaintiff's symptom testimony, this Court need not resolve any other dispute regarding the ALJ's other bases for discounting plaintiff's testimony. Had the ALJ erred in rejecting Plaintiff's symptom testimony based on conservative treatment or activities of daily living, any error would be harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin.*,

Page 10 – OPINION AND ORDER

II.  **Joint Medical Opinion Evidence of Alicia Hicks, PA-C, Caroylyn Day, M.D., and CK Day, M.D.**

In the context of social security claims, a medical opinion is a "statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions[.]" 20 C.F.R. § 404.1513(a)(2); *see also Rodin v. Comm'r of Soc. Sec.*, 2023 WL 3293423, at *12 (E.D. Cal. May 5, 2023) ("the revised regulations now more narrowly define as [medical opinion] a statement from a medical source about what a claimant can still do despite impairments"). ALJs must consider the persuasiveness of all medical opinion evidence. The most important considerations in evaluating the persuasiveness of medical opinions are supportability and consistency. 20 C.F.R. § 404.1520c(a). The supportability of a medical opinion is evaluated by examining the how well the relevant objective medical evidence and the medical source's explanation support the opinion, whereas consistency is evaluated by examining how consistent a medical opinion is with other medical opinions (and prior administrative findings) of record. 20 C.F.R. §§ 404.1520c(c)(1); 404.1520c(c)(2).

Alicia Hicks, PA-C, Caroylyn Day, M.D., and CK Day, M.D. all submitted one joint medical opinion in support of Plaintiff's disability benefits application. Tr. 796-800. They opined that Plaintiff could sit or stand for 30 minutes at a time and walk for 15 minutes at a time. Tr. 796. They also believed that Plaintiff could sit for three hours, recline for three hours, and stand or walk for two hours in an eight-hour workday, noting that she would also need to be able to change positions frequently. Tr. 797. In terms of lifting and carrying, they opined that Plaintiff

---

533 F.3d 1155, 1163 (9th Cir. 2008) (finding that the ALJ's reliance on invalid reasons was harmless error because the ALJ provided other valid reasons that support the ALJ's credibility determination); *e.g. Jones v. Saul*, 818 F. App'x 781, 781-82 (9th Cir. 2020) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony and thus "[a]ny error in the ALJ's additional reasons for discounting [claimant's] symptom testimony [were] harmless").

could lift and carry up to five pounds, reach, handle, and finger for 30 minutes, and feel for an hour. Tr. 797-98. They also believed Plaintiff would need seven unscheduled breaks throughout the day for 30 minutes, that she would also need to lie down for three hours every day, that she would be off task 25 percent or more, that she would be absent five or more days per month, and that she has good and bad days. Tr. 798-99. They based their limitations on Plaintiff's history, treatment notes, physical exams, laboratory reports and other tests, x-rays, CT scans, MRIs, consultative medical opinions, and psychological evaluations and reports. Tr. 799.

    The ALJ found the joint opinion unpersuasive. Tr. 25-26. To start, the ALJ noted that while the medical providers indicated they based their opinion on medical history, physical exams, consultative medical opinions, treatment notes, laboratory reports, physical therapy reports, x-rays, CT scans, and MRIs, and psychological evaluations, most of the categories of records upon which they based their opinion simply do not exist in the record. Tr. 25-26. The ALJ also noted that there were inconsistencies between the assessed limitations and the objective evidence. Tr. 26. For example, there was no testing done to assess Plaintiff's physical capabilities, nor were there any consultative examinations nor psychological evaluations. Plaintiff did not receive x-rays, CT scans, or MRIs related to her conditions, nor does the longitudinal record support the joint opinion. The medical evidence available, including the treatment notes of the joint signers of the opinion, consistently represented Plaintiff with normal or unremarkable test results, including negative straight leg test, normal motor strength and reflexes, normal gait and balance, normal thought content, and described as awake and alert Tr. 402, 417, 456, 462, 468, 471, 500, 623-24, 648, 669, 761, 768, 772-73. As for laboratory findings and extensive workups, there were none done, even though they were stated to exist. *See*

Tr. 656, 802. The ALJ's conclusions are a reasonable reading of the record and supported by substantial evidence.

Plaintiff argues that the ALJ's evaluation is flawed because of a "fundamental misunderstanding of fibromyalgia" and relies on *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017) to bolster her argument. Pl.'s Br. 10-13. In *Revels*, the Court reversed an ALJ's decision because the ALJ gave "no weight" to the rheumatologist's opinion, despite the doctor treating the claimant for fibromyalgia-related symptoms for two years and providing a two page letter detailing his findings and review of the claimant's "medical history, her repeated complaints of pain, the medical evidence of fibromyalgia, her response to prescribed medications, and his analysis of other doctors' findings." *Revels*, 874 F.3d at 662-663. In the current case, none of the signers of the medical opinion provided any details even remotely similar to *Revels*. As for the ALJ's supposed "fundamental misunderstanding of fibromyalgia," the ALJ acknowledged fibromyalgia as a severe condition, but subjective complaints alone are not enough, and there was no testing of any of Plaintiff's capabilities to support the severe limitations assessed by the joint signers, as indicated by the fact that the Plaintiff could only cite to subjective complaints without any accompanying testing to back up those claims. *See* Pl.'s Br. 6-12, citing Tr. 561, 643, 654, 656, 726, 758, 794, 802, 808-09, 813, 822, 828-29.

The Court thus concludes that the ALJ adequately articulated her findings regarding the persuasiveness of the joint medical opinion.

### III. Lay Witness Testimony

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide

Page 13 – OPINION AND ORDER

"reasons germane to each witness" to reject such testimony.[3] *Id.* (citation and internal quotation omitted). "Lay witness testimony is competent evidence and cannot be disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See Molina*, 674 at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

Plaintiff's supervisor provided a third-party statement on October 24, 2023. Tr. 315. In it, Plaintiff's supervisor noted that Plaintiff works as a customer service representative in a sedentary position making appointments and checking clients in and out. Tr. 315. The supervisor stated that Plaintiff used to work "1.5 days a week," but that she would often call out, leave early, or arrive late because of her conditions, so her hours have been reduced to one eight-hour day, and she still misses work occasionally. Tr. 315.

Plaintiff's husband also submitted a third-party report, dated July 9, 2022. Tr. 252-63. In it, he described Plaintiff as being in constant pain, always fatigued, extremities being numb and tingling, and that she has trouble thinking. Tr. 252. He also reiterated much of Plaintiff's complaints, such as needing rest and naps throughout the day, that she does little when it comes to household chores, that she struggles with grip strength, and that her condition affects her ability to do anything physical, as well as her ability to concentrate, complete tasks, see, and her

---

[3] "In the recent case of *Hudnall v. Dudek*, the Ninth Circuit clarified that nonmedical sources, to include lay testimony from friends and family, are still to be considered in determining the consistency of medical opinions or prior administrative medical findings; nonetheless, the regulations expressly allow ALJs to discount nonmedical evidence without any explanation." *Donnelly v. Comm'r of Soc. Sec.*, No. 1:21-cv-01117-CDB (SS), 2025 WL 1473954, at *14 (E.D. Cal. May 22, 2025) (citing *Hudnall v. Dudek*, 130 F.4th 668 (9th Cir. 2025)). "However, the Ninth Circuit later withdrew the *Hudnall* decision." *Id.* (citing *Hudnall v. Dudek*, 133 F.4th 968 (9th Cir. 2025)); *see also Hudnall v. Dudek*, No. 23-3727, 2025 WL 1379101, at *1 (9th Cir. May 13, 2025) (declining to resolve what standard applies to an ALJ's review of lay witness testimony). "As such, it appears the consideration of lay witness evidence under the revised regulations is again an open question." *Donnelly*, 2025 WL 1473954, at *14.

memory. Tr. 253-57. Plaintiff's husband also noted that she handles stress well, is an "expert direction follower," gets along with authority figures, and handles changes in routine without difficulty. Tr. 257-58.

The ALJ found the lay witness testimony of Plaintiff's supervisor inconsistent with the medical evidence as the record did not support such a high restriction on Plaintiff's ability to work. Tr. 26. Despite Plaintiff's argument to the contrary, an ALJ may discount lay witness testimony for inconsistencies with the medical record when it also serves as a legally sufficient reason to discount the subjective symptom testimony. And, as noted above, this was a valid reason to discount the subjective symptom testimony.

While the ALJ did not provide a germane reason specific to the husband's lay witness testimony, and this does constitute an error, the error is harmless where the ALJ supplied legally sufficient reasons for rejecting the Plaintiff's subjective symptom testimony, and those same rationale would support rejecting the lay witness testimony. *See Villarruel v. Dudek*, No. 24-1233, 2025 WL 999479, at *2 (9th Cir. Apr. 3, 2025) ("'Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony,' the ALJ's failure to discuss the lay witness testimony is harmless error." (*quoting Molina*, 674 F.3d at 1117)). Thus, the ALJ provided reasons germane to the witnesses and did not commit harmful err in discounting the lay witness testimonies.

### IV. Steps Four and Five

At steps four and five, the ALJ must formulate an RFC and determine if Plaintiff is capable of working. The RFC must contemplate *all* medically determinable impairments, including those which the ALJ found non-severe, and evaluate all the relevant testimony,

including the opinions of medical providers and the subjective symptom testimony set forth by the claimant. 20 C.F.R. § 416.945(a)(2). In formulating the RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only those limitations which are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

At step five, the ALJ must determine whether a claimant, given their limitations, age, education, and experience, can perform occupations that "exist in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(1). A VE provides evidence at a hearing that aids the ALJ in this determination. *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192 (9th Cir. 2022); SSR 00-4p. VEs are "professionals who, through their training and experience, have 'expertise and current knowledge of working conditions and physical demands of various jobs; knowledge of the existence and numbers of those jobs in the national economy; and involvement in or knowledge of placing adult workers with disabilities into jobs.'" *Id.* (quoting *Biestek*, 587 U.S. at 100 (quotations and alterations omitted)). In accordance with the regulations, an ALJ may rely on a VE's testimony to support a finding that a claimant can perform occupations that exist in significant numbers in the national economy. *Id.*; *see also* 20 C.F.R. §§ 416.960(b)(2), 416.966(e); *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020).

Plaintiff argues that the step four finding, in which the ALJ found that Plaintiff could still perform her past relevant work as a retail clerk, was invalid based on the ALJ's RFC and the subsequent conflict it created with the VE's testimony and the DOT. Pl.'s Br. at 32-33.

The ALJ's RFC limited Plaintiff to "simple and detailed, but not complex, work tasks and decision making." Tr. 20. This limitation would restrict Plaintiff's occupations to those requiring

a GED Reasoning level of 2. *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) ("Level 2 Reasoning—applying common sense to carry out detailed but uncomplicated instructions and dealing with problems involving a few variables"). According to the VE, Plaintiff's past relevant work as a retail clerk is incompatible with the RFC because a retail clerk is a semi-skilled position with an SVP of 3, at least as it was performed by her. However, it is unclear if as generally performed it would still count as SVP 3, or would be considered SVP 2. The VE, when questioned specifically about Plaintiff's ability to perform the job as generally performed rather than as she performed it, the VE stated she could still be a retail clerk but only as generally performed. Tr. 57. Assuming that Plaintiff is correct, that she would not be capable of performing her past relevant work, this is not reversible error because the Plaintiff has failed to demonstrate how she was prejudiced by this finding. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("Reversal on account of error is not automatic, but requires a determination of prejudice.") The ALJ did not decide that Plaintiff was not disabled based only on her ability to return to her past relevant work. Rather, the ALJ made this determination then made alternative findings at step five. As such, Plaintiff was not disadvantaged by this finding, despite the ALJ's error.

Plaintiff makes a similar argument regarding the ALJ's step five finding. At step five, the ALJ posed hypotheticals to the VE, and the VE returned three jobs that Plaintiff could still do despite her limitations: collator operator, mail clerk, and cafeteria attendant. Tr. 57-58. According to the VE, each of the three jobs were light and unskilled. Tr. 57-58. Plaintiff argues that the mail clerk position is invalid because it requires a GED reasoning level of 3, which conflicts with the ALJ's RFC finding discussed above. Pl.'s Br. 33-34 (Plaintiff mistakenly listed the mail clerk as needing reasoning level 2); *see* DOT 209.687-026 Mail Clerk. However, even

with the mail clerk position eliminated, the ALJ has carried her burden at step five to show that jobs exist in significant numbers in the national economy that plaintiff can perform. The collator operator is light, unskilled work that comports with Plaintiff's RFC, and has approximately 33,000 jobs in the national economy, and the cafeteria attendant is light, unskilled work that also complies with the Plaintiff's RFC with 20,400 jobs in the national economy. Tr. 57-58. Combined, the two occupations offer 53,400 jobs in the national economy, which constitutes a significant number. *See Tommasetti*, 533 F.3d at 1043-44 (holding that, given claimant's residual functional capacity, a single occupation with a significant number of jobs in the national economy was adequate). Therefore, the ALJ's step five finding is supported by substantial evidence and any perceived error is harmless. *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (holding that error that is inconsequential to the ultimate nondisability determination is harmless error).

## ORDER

In sum, the ALJ properly discounted Plaintiff's subjective symptom testimony, the medical opinions, and the lay witness testimony, and properly completed Steps Four and Five. For the reasons set forth above, the decision of the Commissioner is AFFIRMED.

It is so ORDERED and DATED this 9 day of October, 2025.

_____
MARK D. CLARKE
United States Magistrate Judge